[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 267 
Appellee, Mrs. Jewell Keener, filed a complaint seeking to set aside two deeds conveying her fee simple interest in two separate parcels of property to herself and Appellant, Hoyt Johnson, jointly for life with remainder to survivor. Hoyt Johnson is the nephew of Jewell Keener. One of the parcels is located in Bessemer (Jefferson County), Alabama, and the other parcel is located in Clanton (Chilton County), Alabama.
Mrs. Keener's complaint, as amended, alleges in substance that she was urged by the defendant to sign certain instruments that were falsely and fraudulently represented to the plaintiff to be legal documents other than deeds. Particularly, in regard to the Bessemer property, Mrs. Keener's complaint states that her nephew falsely and fraudulently represented to her that she was signing a document necessary to insure that absolute title would be in her name, when, in fact, the instrument was a deed naming Jewell Keener as grantor and Jewell Keener and Hoyt Johnson as joint grantees for life with remainder to the survivor. Mrs. Keener's complaint alleges that the defendant had knowledge of the falsity of the statements when they were made and that she believed and relied upon these false representations in affixing her signature to the instruments.
Mrs. Keener also contends that there was a confidential relationship between herself and the defendant and that the defendant was able to unduly influence plaintiff to execute the two deeds made the basis of this action. Additionally, it is alleged that the transfers were made for grossly inadequate consideration.
At trial, Mrs. Keener testified that when she signed the deed to the Clanton property she was told and believed she was signing a power of attorney. Mrs. Keener testified that when she signed the deed to the Bessemer property she was told, and believed, that she was signing an instrument necessary to insure absolute title in herself after her husband's death. Mrs. Keener testified that her nephew's name was added to this instrument after she had signed it and that she was not aware that his name appeared on the instrument until many years after the deed was recorded.
The trial Court found that a confidential relationship existed between the defendant and the plaintiff and that the defendant was the dominant party. The trial Court further found that the defendant had failed to rebut the presumption, created when a confidential relationship is shown, that the transaction was a result of undue influence. Based on these findings, the trial Court set aside the two deeds in question. We reverse.
Undue influence can generally be defined as influence which dominates the grantor's will and coerces it to serve the will of another. Taylor v. Godsey, 357 So.2d 979 (Ala. 1978); Terryv. Terry, 336 So.2d 159 (Ala. 1976); Wyatt v. Riley, 292 Ala. 277, 293 So.2d 288 (1974). When the parties stand in confidential relationship and the evidence tends to show that the beneficiary is the dominant party, the law raises a presumption of undue influence and places on the beneficiary the burden to repel the presumption when the transaction is assailed. Wolfe v. Thompson, 285 Ala. 745, 235 So.2d 878
(1970); Taylor v. Godsey, supra.
Undue influence is a species of constructive fraud (Wyatt v.Riley, supra; Knox v. Knox, 95 Ala. 495, 11 So. 125 *Page 268 
(1892)), and although difficult of direct proof, much latitude is allowed in the testimony. Orton v. Gay, 285 Ala. 270,231 So.2d 305 (1970). It is because of the difficulty encountered in proving undue influence that the law provides a presumption of unlawful coercion where a beneficiary of a transaction is shown to have been in a confidential relationship with the grantor.
Fraud, on the other hand, is never presumed and the burden is on the one asserting fraud to prove it. Macon v. AlabamaMineral Land Co., 295 Ala. 222, 326 So.2d 715 (1977); Manginav. Bush, 286 Ala. 90, 237 So.2d 479 (1970). Thus, while the law will closely scrutinize a transaction between parties in a confidential relationship to insure the absence of fraud, no presumption of fraud will arise merely because the relationship exists.
It is true that the words "fraud," "duress" and "undue influence" are frequently used interchangeably in will contests or in actions seeking to cancel instruments. Under the facts of many cases, it is a mere choice of terms. As noted above, undue influence is correctly considered a species of fraud.
Without question, undue influence invalidating a deed may have its foundation in false and fraudulent representations; but, for false and fraudulent statements to enter as an element into undue influence as a ground for setting aside a deed, it is necessary that the misrepresentation be shown to have been intermingled with or made the basis of importunities and mental pressure on the grantor. See In Re Carson's Estate, 184 Cal. 437,194 P. 5 (1920).
Fraud in the sense of deceit is a ground for cancellation separate and distinct from that of undue influence. See Gockelv. Gockel, 66 S.W.2d 867 (Mo. 1933); Estate of Ricks, 160 Cal. 467,117 P. 539 (1911). See, also, Annot. 28 A.L.R. 790, supp. 92 A.L.R. 792, and cases cited therein.
At 79 Am.Jur.2d Wills § 410, the following is stated:
 "It has been observed that fraud and undue influence are usually the very opposites of each other. Undue influence compels the testator to yield through fear and make a will [deed] which he would instantly repudiate if free and unconstrained, while fraud, although it may poison the mind of the testator, [grantor] leads him to use his testamentary power [power to grant] not only willingly, but often with pleasure and satisfaction, to disinherit persons who have the strongest natural claims upon his affections. Concisely stated, fraud wilfully deceives free agency, while undue influence overmasters it."
We add to this that fraud may also, as alleged in this case, so deceive the grantor as to make him unaware of the nature or results of his acts (i.e., signing a deed based upon the false representation as to the contents of the instrument). But this form of fraud is a form of misrepresentation or deceit and clearly is distinguishable from that species of fraud concerning the overpowering or domination of another's will.
In this case, the plaintiff testified that when she signed the deed in Clanton she was fraudulently induced by her nephew's representations to believe she was signing a power of attorney. As to the Bessemer property, the plaintiff testified that she was fraudulently induced by her nephew's representations to believe she was signing necessary documents to insure that absolute title was in her name after the death of her husband. This testimony is totally inconsistent with the theory of undue influence. This is not a case where a plaintiff is complaining that the signing of the deeds was a result of coercion, dominance of her will, fear, and/or duress. Instead, the plaintiff here asserts that she was defrauded, tricked, deceived into signing deeds under the belief that the documents she signed were legal documents other than deeds.
The plaintiff's testimony conclusively shows that the plaintiff can recover, if at all, only on a theory of fraud. As noted earlier, in a fraud case, no presumption arises from the fact that a confidential *Page 269 
relationship exists and the burden is on the plaintiff to plead and prove the fraud. Even assuming that a confidentialrelationship was shown to exist between aunt and nephew, and that the nephew was the dominant party in that relationship, the plaintiff cannot recover based on a presumption of undue influence when her own testimony contradicts that theory of recovery, and for this reason the trial Court erred.
We turn now to the issue of whether the plaintiff proved fraud in the two transactions made the basis of this action. InTaylor v. Godsey, supra, this Court stated, per Mr. Justice Bloodworth, in reversing the trial court's order setting aside a deed which the plaintiff/appellee contended was the result of undue influence and fraud:
 "The general rule is that fraud, when alleged, must be clearly and satisfactorily proven. Ingram v. Horn, supra [294 Ala. 353, 317 So.2d 485 (1975)].
 `"If the proof is uncertain in any material respect, it will be held insufficient, though the court may feel that a great wrong has been done; the court cannot grant the relief by reason of uncertainty;" Wooddy v. Matthews, 194 Ala. 390, 69 So. 607 (1915).'
 "In this case, the proof is too uncertain to sustain the trial court. The evidence shows that these deeds were signed and acknowledged on three separate occasions by a woman who had signed similar instruments in the past.
 "This court is committed to the proposition that an acknowledgment is entitled to great weight and can be impeached only by evidence that is clear and convincing. Ingram v. Horn, supra.
 "Each deed bore the inscription, `Warranty Deed,' on its face. Testimony by her attorney is to the effect that he had probably explained the significance of the transaction to her. Although Mrs. Hamby may not have read the instrument in its entirety, the law is clear in this State that when a grantor fails to read a deed (having the ability to read and understand it) and this results in the grantor's execution of an instrument which conveys realty, which it is subsequently averred the grantor did not intend to convey, the grantor's mistake will be attributed to his own negligence and the deed will be upheld so long as his signature was not induced, inter alia, by fraud or misrepresentation. Ingram v. Horn, supra.
 "Furthermore, there is no explanation in the record nor has any been advanced on appeal as to why Mrs. Hamby would execute (as she contends she intended to do) two wills at the same time, each devising different tracts of land."
The facts of this case are almost identical to those inTaylor; likewise, the proof here is too uncertain to show fraud.
In this case, as to the Bessemer property, Mrs. Keener testified that her nephew took her to the office of E.L. Brobston in Bessemer. Mrs. Keener testified that E.L. Brobston was her attorney at that time. Mrs. Keener's present attorney states in brief:
 "One thing here is perfectly clear, and that is Mr. Brobston would have nothing to gain from any such transaction and furthermore he is incapable of misusing a confidential relationship."
Yet, if Mrs. Keener's testimony is believed (that her nephew's name was added after her signature was placed on the deed), it would mean that Mr. Brobston had prepared a deed naming Jewell Keener as sole grantor and Jewell Keener as sole grantee. This instrument would have been a nullity and Mr. Brobston could only have prepared such an instrument if he were a party to a fraud perpetrated upon Mrs. Keener. This is totally inconsistent with Mrs. Keener's theory that her nephew alone defrauded her.
Furthermore, the deed states upon its face that it is a Warranty Deed, Jointly for Life with Remainder to Survivor. The deed contains a general acknowledgment notarized by Bernice Burke, Mr. Brobston's secretary and a notary public. In order for *Page 270 
Mrs. Keener to testify that her nephew's name was added to the deed, she must have read the deed with sufficient scrutiny to realize that this was a joint deed and it would have been apparent to even a layman that this would have been a deed conveying property she already owned to herself with remainder to the survivor. This would have been a totally illogical transaction, and, therefore, Mrs. Keener cannot allege that she placed reliance on any misrepresentation by her nephew as to the effect of the instrument, or that his name was not part of the instrument she signed without completely contradicting herself.
As to the Clanton property, Mrs. Keener testifies that she believed she was signing a power of attorney and not a deed. The testimony of Mr. Lawrence Gerald, the attorney who prepared the deed is that, when the aunt and nephew came to his office, Mrs. Keener said she wanted a deed to Mr. Johnson. Mr. Gerald testified that the aunt wanted a deed to the nephew alone and that he explained to her the difference between a straight warranty deed and a joint survivorship deed and that she said go ahead with the survivorship deed. Mr. Gerald stated that Mrs. Keener gave him the description of the property. The deed is acknowledged and notarized by Mr. Gerald's secretary who testified she advised Mrs. Keener before she signed the deed as to the legal effect of the deed.
We hold that the evidence is too uncertain to prove fraud in the two conveyances involved in this case.
Finally, Appellee contends the testimony of Johnson is to the effect that the reason the property was conveyed into joint ownership was so he could take care of it for his aunt and to make sure the property stayed in the family; and that a material part of the consideration was Johnson's promise to support and care for his aunt during her lifetime. Appellee thus asserts the trial Court's order should be affirmed under the mandate of Code 1975, § 8-9-12, which provides:
 "Any conveyance of realty wherein a material part of the consideration is the agreement of the grantee to support the grantor during life is void at the option of the grantor, except as to bona fide purchasers for value, lienees and mortgagees without notice, if, during the life of the grantor, he takes proceedings to annul such conveyance."
As noted in the discussion of undue influence, plaintiff's theory at trial was that she did not know what she was signing at the time these deeds were executed. This theory is entirely inconsistent with a theory that, when plaintiff signed the deed, it was done for the consideration of a promise to provide for her care. This was not the theory of the pleadings, nor was the case tried on this theory. To allow Appellee the advantage of the statute at this point in time would be to allow Appellee to raise this theory for the first time on appeal. Appellee cannot have the trial Court affirmed on a theory totally inconsistent with the issues tried by that Court.
For the foregoing reasons, this case is due to be reversed and rendered.
REVERSED AND RENDERED.
MADDOX, SHORES and BEATTY, JJ., concur.
TORBERT, C.J., concurs in the result.